# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

_____

IN RE:
PETER WOJTKUN,                                    Chapter 7
     DEBTOR.                                 Case No. 13-12719-WCH


_____


JOSEPH G. BUTLER, CHAPTER 7
TRUSTEE,
     PLAINTIFF,

v.                                                Adversary Proceeding
                                                  Case No. 15-1016
PETER WOJTKUN, SUSAN WOJTKUN,
INDIVIDUALLY AND AS TRUSTEE OF
THE SUSAN R. WOJTKUN LIVING
TRUST, AND S.R.W. REALTY CORP.,
     DEFENDANTS.


_____


## MEMORANDUM OF DECISION

## I. <u>INTRODUCTION</u>

The matter before the Court is the "Defendants' Motion to Dismiss" (the "Motion to Dismiss") filed by the debtor, Peter Wojtkun (the "Debtor"), his wife, Susan Wojtkun ("Susan"), individually and as trustee of the Susan R. Wojtkun Living Trust (the "Living Trust"), and S.R.W. Realty Corp. (collectively, the "Defendants"), and the "Opposition of the Chapter 7 Trustee to Defendants' Motion to Dismiss" (the "Opposition"), filed by the Chapter 7 trustee (the "Trustee").    Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants have asked me to dismiss 13 counts of the Trustee's complaint (the "Complaint"), through which he is seeking: (1) a declaration that a resulting trust exists for an interest in the sale proceeds of real

1

property in Georgetown, Massachusetts (the "Georgetown Property") that Susan sold in 2014;

(2) a declaration that a constructive trust exists for an interest in the sale proceeds of the

Georgetown Property; (3) a declaration that a resulting trust exists in a condominium S.R.W.

Realty Corp. holds title to in Puerto Rico (the "Condominium"); (4) a declaration that a

constructive trust exists in the Condominium; (5) avoidance of transfers of income from the

Debtor to Susan as actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A); (6) avoidance of transfers

of income from the Debtor to Susan as constructive fraud pursuant to 11 U.S.C. §

548(a)(1)(B)(ii)(I);[1] (7) avoidance of transfers of income from the Debtor to Susan as

constructive fraud pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(IV); (8) avoidance of transfers of

income from the Debtor to Susan pursuant to Mass. Gen Laws ch. 109A, § 5(a)(1); (9) avoidance

of transfers of income from the Debtor to Susan pursuant to Mass. Gen. Laws ch. 109A, § 6(a);

(10) avoidance of transfers of income from the Debtor to Susan pursuant to Mass. Gen. Laws ch.

109A, § 6(b); (11) avoidance of transfers of income from the Debtor to Susan pursuant to 11

U.S.C. § 547(b); (12) equitable reach and apply of the Debtor's interest in the Condominium and

the Georgetown Property or their sale proceeds; and (13) damages for grossly excessive

compensation through a shareholder derivative action on behalf of Peter Wojtkun DMD P.C. (the

"Corporation") against Susan for aiding and abetting a breach of fiduciary duty and unjust

enrichment.  For the reasons set forth below, I will grant in part and deny in part the Motion to

Dismiss.

---

[1] The Trustee labels this count "Avoidance of Income Transfers for Constructive Fraud, § 548(a)(1)(B)" in the
Complaint, but it is apparent in his pleadings that he means to refer to 11 U.S.C. § 548(a)(1)(B)(ii)(I).

## II. BACKGROUND

For purposes of this motion, I must assume the truth of all well-pleaded facts set forth in the Complaint.[2]

In 1993, the Debtor owned and operated at least two business entities, the purpose of which was to own and operate a golf club located at 258 Andover Street, Georgetown, Massachusetts (the "Golf Course").[3]   The Trustee states that the Debtor has owned, at various times, Georgetown Golf Club, Inc., New England Golf Partners, Inc., and Georgetown Links, LLC (collectively, the "Golf Entities").[4]   In 1993, the Debtor also apparently "substantially owned and managed" Beta Leasing, LLC ("Beta Leasing"), an affiliate of the Golf Entities.[5] Since 1994, the Debtor has owned and controlled the Corporation, a dental practice with a place of business at 351 North Main Street in Andover.[6]   The Debtor works as a dentist at the Corporation and Susan, who is his wife, is also an employee of the Corporation.[7]   Susan initially was a nurse at the Corporation and is now an office manager.[8]

In 1994, the Debtor confirmed a plan in an individual Chapter 11 bankruptcy case and the case closed.[9]   The confirmed Chapter 11 plan provided for payments of liabilities exceeding $3

---

[2] *See Banco Santander de Puerto Rico v. Lopez–Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 15 (1st Cir. 2003).

[3] Complaint, Docket No. 1, ¶ 22.

[4] *Id.* at ¶¶ 20,22, 32 .

[5] *Id.* at ¶ 22.

[6] *Id.* at ¶ 8.

[7] *Id.* at ¶ 39.

[8] *Id.* at ¶¶ 16, 39.

[9] *Id.* at ¶ 32.

million related to the development of the Golf Course.[10]   Some of the Golf Entities were formed while that case was pending.[11]

On August 30, 1999, the Debtor and Susan sold a home they owned in Andover for $349,000.[12]   On October 1, 1999, the Georgetown Property was purchased in the name of Susan as trustee of the 300 Andover Street Realty Trust (the "Realty Trust") for $120,000.[13]   The Trustee was not provided with a schedule of beneficiaries prior to filing his Complaint.[14]   The Debtor and Susan demolished an existing house on the property to build a new house.[15] Documents Susan produced to the Trustee indicate an additional $375,000 was spent on contractors and material suppliers for the renovations.[16]   The construction of the new house was financed with a mortgage Susan granted as trustee of the Realty Trust, dated October 1, 1999.[17] Between 1999 and 2011, the Debtor, Susan, the Realty Trust, and the Living Trust executed numerous mortgages on the Georgetown Property, and it is not always clear whether the new mortgages refinanced and discharged prior existing mortgages or resulted in additional obligations.[18]

---

[10] *Id.*

[11] *Id.* at ¶ 32.

[12] *Id.* at ¶ 36.

[13] *Id.* at ¶¶ 35-36.

[14] *Id.* at ¶ 35.

[15] *Id.* at ¶ 36.

[16] *Id.* at ¶ 37.

[17] *Id.* at ¶ 38.

[18] *Id.* at ¶¶ 38, 40, 42, 44-47.

At the time of the purchase of the Georgetown Property, the Debtor and Susan were employed by the Corporation.[19]   According to their 1999 joint tax return, the Debtor earned $81,323 and Susan earned $43,114 that year.[20]   Their 2000 joint tax return reflects that the Debtor earned $79,300 and Susan earned $44,336.[21]   The Debtor and Susan refinanced their mortgage on July 26, 2000, in the amount of $450,000 in favor of Wells Fargo Home Mortgage, Inc.[22]   The mortgage identified Susan, the Debtor, and the Realty Trust as mortgagors and each of those parties executed the mortgage.[23]

On or around December 31, 2001, the Golf Entities executed promissory notes in the amounts of $5,200,000 and $250,000 and loan agreements with Sovereign Bank as part of that transaction.[24]   The Debtor executed a limited guaranty.[25]   A financing statement the Debtor gave to Sovereign Bank in 2001 indicated he had a 50% interest in the Georgetown Property, which was worth $900,000 at the time.[26]

On February 21, 2002, the Debtor, Susan, and the Realty Trust "replaced" the mortgage on the Georgetown Property by executing a $450,000 mortgage in favor of Sovereign Bank.[27]

---

[19] *Id.* at ¶ 39.

[20] *Id.*

[21] *Id.*

[22] *Id.* at ¶ 40.

[23] *Id.*

[24] *Id.* at ¶ 23.

[25] *Id.*

[26] *Id.* at ¶ 41.

[27] *Id.* at ¶ 42.

On October 31, 2002, Susan, acting as trustee for the Realty Trust, transferred the Georgetown Property to herself as trustee of the Living Trust.[28]  Susan is the beneficiary of the Living Trust.[29]

The Debtor and Susan granted first and second mortgages in the amounts of $440,000 and $150,000 on the Georgetown Property in favor of Citizen's Bank on April 30, 2003. [30]  The first mortgage secures a $440,000 promissory note executed by the Debtor and Susan, with Susan as trustee of the Living Trust identified as the mortgagor.[31]  The second mortgage secures a $150,000 home equity line of credit, also executed by the Debtor and Susan and identifying Susan as trustee of the Living Trust as mortgagor.[32]

In 2007, Beta Leasing executed notes and entered into Loan Agreements with Sovereign Bank, pursuant to which Sovereign Bank loaned Beta Leasing a total of $146,395.[33]  The Debtor personally guaranteed the loans.[34]

In 2008, the Debtor's salary from the Corporation had increased to $199,486 and Susan's had increased to $140,300, both after 401(k) contributions.[35]  In 2009, the Debtor earned $207,447 from the Corporation and Susan earned $106,800 after 401(k) contributions.[36]

---

[28] *Id.* at ¶ 43.

[29] *Id.*

[30] *Id.* at ¶ 44.

[31] *Id.*

[32] *Id.*

[33] *Id.* at ¶ 23.

[34] *Id.*

[35] *Id.* at ¶ 19.

[36] *Id.*

On February 19, 2009, the Debtor and Susan executed a $335,000 mortgage on the Georgetown Property in favor of Sovereign Bank.[37]  The mortgage identified the borrowers as the Debtor and Susan, individually and as trustee of the Living Trust, and indicated the borrowers executed a promissory note in the amount of $335,000.[38]  The Trustee states that in addition to the mortgages the Debtor and Susan executed between 1999 and 2009, the Georgetown Property was refinanced four times, in November 2002, November 2009, February 2011, and September 2011.[39]  Susan executed the November 2009 and September 2011 mortgages as trustee of the Living Trust, and the Debtor executed the February 2011 mortgage.[40]  Three of the refinancing transactions were used to remove equity from the Georgetown Property.[41]  At least some of the loan applications related to refinancing the mortgage identified both the Debtor and Susan as borrowers and contained financial information for both of them.[42]

On May 26, 2009, Sovereign Bank declared the loans to the Golf Entities in default and sent notices of default and acceleration to the Golf Entities and the Debtor.[43]  On October 22, 2009, Sovereign Bank declared the loans to Beta Leasing in default and sent notices of default and acceleration to Beta Leasing and the Debtor.[44]  On September 11, 2009, the Debtor caused the Golf Entities to file Chapter 11 petitions in the Bankruptcy Court for the District of

---

[37] *Id.* at ¶ 45.

[38] *Id.*

[39] *Id.* at ¶ 46.

[40] *Id.*

[41] *Id.* at ¶ 47.

[42] *Id.* ¶¶ 45, 48.

[43] *Id.* at ¶ 25.

[44] *Id.*  at ¶ 29 p. 7 (the Complaint contains two paragraphs labelled "29," one on page 7 and one page 8; to distinguish between them, I will refer to them as "at ¶ 29 p. 7" and "at ¶ 29 p. 8").

Massachusetts.[45]  The cases were dismissed on September 18, 2009, and the Golf Entities filed Chapter 7 petitions on November 25, 2009.[46]

Sovereign Bank was granted relief from stay to foreclose on mortgages and security interests it held in relation to the Golf Entities on January 22, 2010.[47]  On or around April 26, 2010, Sovereign Bank assigned its interest in the Golf Entities and Beta Leasing loans to Black Swan Country Club, LLC ("Black Swan").[48]  Black Swan conducted a foreclosure sale on June 11, 2010.[49]  Subsequently, Black Swan asserted a deficiency claim against the Golf Entities of approximately $1,690,000, plus interest, attorneys' fees, and the cost of collection.[50] Additionally, Black Swan asserted a deficiency claim of $89,000, plus interest, attorneys' fees, and the cost of collection, against Beta Leasing.[51]  Black Swan demanded payment of the deficiencies from the Debtor pursuant to his personal guaranties of the loans.[52]

On October 15, 2010, Black Swan commenced an action in the Suffolk County Superior Court to recover a judgment for the deficiency claims it asserted against the Debtor and Beta Leasing.[53]  The court scheduled a trial for May 13, 2013.[54]  Ultimately, the Debtor filed his Chapter 7 petition on May 7, 2013, thus staying the trial.[55]

---

[45] *Id.* at ¶ 26.

[46] *Id.*

[47] *Id.*

[48] *Id.* at ¶ 27.

[49] *Id.* at ¶ 28.

[50] *Id.* at ¶ 29 p. 8.

[51] *Id.*

[52] *Id.*

[53] *Id.* at ¶ 30.

[54] *Id.*

During the insolvency of the Golf Entities and Beta Leasing, the Debtor and Susan's salaries changed again.[56]   In 2010, the Debtor earned $115,671 after 401(k) contributions while Susan earned $170,908.[57]

On February 17, 2011, S.R.W. Realty Corp., an entity of which Susan is the sole officer and director, was incorporated.[58]   On March 1, 2011, S.R.W. Realty Corp. purchased the Condominium in Puerto Rico for $355,000.[59]   The Condominium was purchased with $345,000 from an account in the name of the Living Trust and $17,500 from an account in Susan's name.[60] The Debtor and Susan spend between seven and ten days per month at the Condominium.[61]

In 2011, the Debtor earned $88,000 and Susan earned $198,580 from the Corporation after 401(k) contributions.[62]   They earned almost identical amounts in 2012, with the Debtor earning $88,000 and Susan earning $198,579.[63]   The Corporation's 2012 tax return also reveals that it paid management fees of $130,000 to an unknown party.[64]

---

[55] *Id.*

[56] *Id.* at ¶19.

[57] *Id.*

[58] *Id.* at ¶ 53.

[59] *Id.*

[60] *Id.* at ¶ 54.   The Trustee did not explain why the combined total of these two checks exceeds the $355,000 purchase price.

[61] *Id.* at ¶¶ 33(iv), 53.

[62] *Id.* at ¶ 19.

[63] *Id.*

[64] *Id.*

As previously stated, the Debtor filed his Chapter 7 petition on May 7, 2013.[65]   The Debtor claimed an exemption of $7,577 for his stock in the Corporation and stated that its value was "unknown" on his Schedule C.[66]   At a meeting held pursuant to 11 U.S.C. § 341 on June 4, 2013, the Debtor claimed the Corporation is "almost worthless."[67] He testified:

> [N]obody would buy that practice because there's no value in it. I'm going to open up next door . . . the patients are still going to come to me . . . if anybody knew that was going to happen, they wouldn't buy the practice.[68]

Nevertheless, the Debtor testified that the Corporation's 2012 revenues were approximately $1,100,000, which was an increase from the prior year, and that the Corporation had a total of nine employees, including a second dentist.[69]   The Debtor testified that he does not own any real estate or an automobile.[70]   He uses a 2011 Honda SUV that Susan owns, and testified that Susan owned the Georgetown Property as trustee of the Living Trust.[71]   At a deposition, Susan corroborated that the title to the Honda SUV is in her name and stated "I own most of our property."[72]

Susan, as trustee and individually, sold the Georgetown Property on October 3, 2014, for $640,000.[73]   Net proceeds from the sale totaled approximately $40,000.[74]

---

[65] *Id.* at ¶ 30.

[66] *Id.* at ¶ 10.

[67] *Id.* at ¶ 11.

[68] *Id.*

[69] *Id.* at ¶ 13.

[70] *Id.* at ¶ 33(ii).

[71] *Id.*

[72] *Id.* at ¶33(iii).

[73] *Id.* at ¶ 49.

[74] *Id.*

On January 13, 2015, the Trustee filed the present adversary proceeding against the Defendants. Through his Complaint, the Trustee asserted claims for: declarations that resulting trusts and constructive trusts exist for the Debtor's interest in the Condominium and proceeds of the sale of the Georgetown Property; avoidance of transfers of income from the Debtor to Susan pursuant to 11 U.S.C. §§ 547(b), 548(a)(1)(A), 548(a)(1)(B)(ii)(I), and 548(a)(1)(B)(ii)(IV), and Mass. Gen. Laws ch. 109A, §§ 5(a)(1), 6(a), and 6(b); equitable reach and apply of the Debtor's interest in the proceeds of the sale of the Georgetown Property and the Condominium; and a shareholder derivative action on behalf of the Corporation against Susan for aiding and abetting a breach of fiduciary duty and unjust enrichment.[75] The Trustee's Complaint also sought a preliminary injunction,[76] and he filed a Motion for a Preliminary Injunction on January 13, 2015.[77] On January 22, 2015, I held a hearing and granted the Trustee's Motion for a Preliminary Injunction. S.R.W. Realty Corp. filed a Motion to Dismiss for Lack of Personal Jurisdiction on February 26, 2015, which it withdrew on March 3, 2015. Also on February 26, 2015, the Defendants filed a Motion to Dismiss[78] and a Memorandum of Law in Support of Motion to Dismiss.[79] The Trustee filed his Opposition on March 19, 2015,[80] to which the Defendants filed a Reply on March 30, 2015.[81] On April 1, 2015, I held a hearing and, at its

---

[75] *Id.* at ¶¶ 57-134.

[76] *Id.* at ¶¶ 135-40.

[77] Trustee's Motion for a Preliminary Injunction, Docket No. 2.

[78] Docket No. 43.

[79] Docket No. 44.

[80] Docket No. 50.

[81] Docket No. 51.

conclusion, took the matter under advisement.  Following the hearing, on April 23, 2015, I

granted the Trustee's Motion to File Surreply Brief (the "Surreply").[82]

## III. <u>POSITIONS OF THE PARTIES</u>

### A.  <u>The Defendants</u>

The Defendants first seek dismissal of Counts I and III, the Trustee's counts seeking a

resulting trust in the Georgetown Property and the Condominium, respectively.  The Defendants

contend that a resulting trust only arises when a party who supplies the purchase price places

property in the name of another while intending that the property will inure to the party's own

benefit.  They argue that the Trustee failed to allege that the Debtor paid the purchase price for

the Georgetown Property or the Condominium.  Further, they state that the Complaint asserts

that Susan paid the purchase price for both.  Thus, according to the Defendants, there can be no

resulting trust, and the Trustee has not stated a resulting trust claim for which relief can be

granted.

Next, the Defendants seek dismissal of the Trustee's Counts II and IV for constructive

trusts in the Debtor's purported interests in proceeds from the sale of the Georgetown Property

and in the Condominium, respectively, for several reasons.  The Defendants first argue that this

cause of action is based on allegations of fraud and is therefore pre-empted by Massachusetts's

Uniform Fraudulent Transfer Act (the "MA UFTA").  Second, they contend that a constructive

trust is a remedy rather than a cause of action.  Third, they state that even if it is a cause of

action, imposing a constructive trust requires that the party holding the property acquired it

through fraud, mistake, breach of duty, or other circumstances arising at the time of the

conveyance that indicate the property holder would be unjustly enriched.  They argue that the

Trustee has not alleged that Susan or the Living Trust acquired the Georgetown Property under

---

[82] Docket No. 61.

such circumstances.   While conceding that the Trustee alleged that the Debtor had a beneficial interest in the Georgetown Property because he lived there, was listed on the loan application for some of the mortgages on that property, and likely contributed to mortgage payments, they contend these allegations are insufficient to qualify for a constructive trust.   Similarly, the Defendants state that the Trustee failed to allege that S.R.W. Realty Corp. acquired the Condominium through breach of a legal duty owed to the Debtor, mistake, fraud, or unjust enrichment.   They argue that the Trustee's allegations that the Debtor has a beneficial interest in the Condominium as a result of spending time there and paying Susan an excessive salary through the Corporation are insufficient to establish a constructive trust.

Next, the Defendants assert arguments that, if correct, support dismissing the avoidance claims asserted pursuant to 11 U.S.C. § 548(a)(1)(A) in Count V, 11 U.S.C. § 548 (a)(1)(B)(ii)(I) in Count VI, 11 U.S.C. § 548(a)(1)(B)(ii)(IV) in Count VII, Mass. Gen Laws ch. 109A, § 5(a)(1) in Count VIII, and Mass. Gen. Laws ch. 109A, § 6(a) in Count IX, 11 U.S.C. § 547(b) in Count X, and Mass. Gen. Laws ch. 109A, § 6(b) in Count XI.   The Defendants state that the Debtor does not have the requisite interest in the purported income transfers the Trustee wants to avoid; namely Susan's salary.   According to the Defendants, the salary and any management fees paid to Susan were from the assets of the Corporation.   In Massachusetts, a corporation is a separate legal entity from a shareholder, therefore, the Debtor does not have an interest in the Corporation's property.   The Defendants acknowledge that, through the doctrine of reverse veil piercing, a court may find a corporation's property is property of the estate.   That doctrine, the Defendants argue, does not apply here because the Corporation was a vibrant business with multiple employees and a growing revenue base.   Thus, the Corporation's payments to Susan could not be transfers of the Debtor's interest in property.   The Defendants contend that this is

true even if the payments are characterized as the Debtor's transfer of his right to payment from the Corporation to Susan. Accordingly, the Defendants argue that counts V, VI, VII, VIII, IX, X, and XI must be dismissed for failure to state a claim.

The Defendants further argue that even if there was a transfer of an interest of the Debtor in property, 11 U.S.C. § 547(b) and Mass. Gen. Laws ch. 109A, § 6(b) require the transfer to have been made to a creditor. The Defendants contend that Susan was not a creditor of the Debtor. Therefore, the Defendants argue, the Trustee has failed to state preferential transfer claims for which relief can be granted in Counts X and XI.

The Defendants argue that I should dismiss Count XII, the Trustee's claim for equitable reach and apply of the Debtor's interest in the Condominium and the sale proceeds of the Georgetown Property because equitable reach and apply is a remedy, not a substantive cause of action. They further argue that reach and apply requires a plaintiff to establish, first, that a defendant owes the plaintiff a debt, and, second, that the debt may be satisfied from property held by a party that owes a debt to the defendant. The Defendants state that the Trustee has failed to establish an underlying debt and that the Debtor has no interest in the Condominium or Georgetown Property sale proceeds for the Trustee to reach and apply. Thus, they contend that Count XII should be dismissed.

Finally, the Defendants state that I should dismiss Count XIII, the Trustee's shareholder derivative claim against Susan for aiding and abetting a breach of fiduciary duty and unjust enrichment. They state that the Trustee's derivative claim is barred by the defense of *in pari delicto* because the Trustee stands in the shoes of the Debtor, who, as the Corporation's sole shareholder and decision-maker, authorized Susan's salary. The Defendants assert that because Susan was not an insider of the Corporation, the Trustee does not have a defense to *in pari*

14

*delicto*.  Additionally, they argue that Susan's salary was the result of an express contract, and that Massachusetts law does not allow litigants to override an express contract through an unjust enrichment claim.  Therefore, according to the Defendants, the Trustee has failed to state shareholder derivative claims for which relief can be granted.

B. <u>The Trustee</u>

The Trustee argues that he has adequately pled claims for resulting trusts in the Condominium and the Georgetown Property sale proceeds in Counts I and III.  He contends that a resulting trust may be imposed when a transferee holds property in whole or in part as a trustee for the transferor, even if the transferee paid part of the purchase price.  The Trustee points out that, through his Complaint, he has alleged that the Georgetown Property was transferred to Susan as trustee of the Realty Trust alone, but some or all of the purchase price came from the proceeds of a home the Debtor and Susan previously owned together.  Even when the transferor has not paid the purchase price, the Trustee contends that a resulting trust may be imposed if the circumstances surrounding a transfer raise an inference that the transferor did not intend the transferee to receive the entire beneficial interest in the property.  He argues that intent is the key inquiry.  Furthermore, he contends that intent is a question of fact that should not be decided on a motion to dismiss.  He then states that intent may be shown through statements a "would-be beneficiary" makes concerning the property. [83]   He notes that his Complaint alleges the Debtor represented that he had a 50% interest in the Georgetown Property in financial statements, signed documents related to home equity loans and mortgage agreements, lived at and enjoyed the use of the property, and can be inferred to have contributed to mortgage payments.  The Trustee further alleges that a portion of the purchase price of the Condominium came from a refinancing of the Georgetown Property, and, therefore, the Debtor paid part of the purchase price.

---

[83] Opposition, Docket No. 50 at 10.

Additionally, the Trustee's Complaint alleges that the Debtor has the use and enjoyment of the Condominium.

The Trustee argues that he has stated constructive trust claims in Counts II and IV for which relief can be granted. He states that a constructive trust is a cause of action, not merely a remedy. The Trustee contends that the MA UFTA does not pre-empt his claims because there are two types of constructive trust in Massachusetts, one that requires fraud and one that requires only unjust enrichment. He argues that he has adequately stated a cause of action for the latter, and that a constructive trust for unjust enrichment is outside the scope of the MA UFTA. His Complaint alleges that the Debtor provided some or all of the purchase price for the Georgetown Property and the Condominium, that he signed refinancing and mortgage documents related to the properties, and that he likely contributed to the mortgage payments.

Similar to the Defendants, the Trustee has made multiple arguments that, if correct, would defeat the Motion to Dismiss as to the avoidance claims. The Trustee contends that the claims pursuant to 11 U.S.C. § 548(a)(1)(A) in Count V, 11 U.S.C. § 548 (a)(1)(B) in Count VI, 11 U.S.C. § 548(a)(1)(B)(ii)(IV) in Count VII, Mass. Gen. Laws ch. 109A, §§ 5(a)(1) and (6)(a) in Counts VIII and IX, 11 U.S.C. § 547(b) in Count X, and Mass. Gen. Laws ch. 109A, § (6)(b) in Count XI should not be dismissed because the Debtor transferred his interest in property,  his right to receive payment for his services from the Corporation, to Susan.  Furthermore, the Trustee contends that the purported transfer fits within the broad definition of 11 U.S.C. § 101(54)(D).  He argues that transfers do not have to be made directly by a debtor to be fraudulent.  Additionally, according to the Trustee, the Court may look through the indirect nature of the transfer and recognize that the transfer was really one between the Debtor and Susan.  He further contends that even if the transfer was of property of the Corporation, the

Trustee can recover the funds through the doctrine of reverse veil piercing.  The Trustee also argues that the Court can apply the step transaction doctrine to consolidate the transactions that took place between the Debtor, Susan, and the Corporation into transfers between the Debtor and Susan directly.  He states that the Defendants have elevated form over substance and that the Debtor attempted to use the Corporation to hide the transfers.

Furthermore, he contends, his Counts X and XI, which seek to avoid the alleged income transfers as a preference pursuant to 11 U.S.C. § 547(b) or as a fraudulent transfer pursuant to Mass. Gen. Laws ch. 109A, § (6)(b), should not be dismissed even though  the Defendants contend that Susan is not a creditor of the Debtor. The Trustee states that this cause of action was pled in the alternative to his other fraudulent transfer claims.  He argues that I should not dismiss the cause of action without allowing him discovery to determine if Susan is a creditor first. He further states that if I determine that the Trustee is entitled to reverse pierce the corporate veil, the Debtor would own the assets and liabilities of the Corporation, including any liability to Susan.  The Trustee urges me to allow him discovery on that matter before dismissing the case.

As for his reach and apply cause of action, the Trustee argues that Massachusetts allows two types of reach and apply, and that he has alleged a non-statutory reach and apply claim that is a "viable equitable cause of action."[84]  He argues that because the reach and apply he seeks is non-statutory, the two-step process the Defendants argue is required is irrelevant.  The Trustee states that he is allowed to bring this reach and apply claim because he has the rights and powers of a judgment creditor pursuant to 11 U.S.C. § 544(a)(2).  In the alternative, the Trustee asks that if I conclude he does not have standing to bring a common law reach and apply claim, that I

---

[84] Opposition, Docket No. 50 at 26.

17

allow him to amend his Complaint to include a statutory reach and apply claim pursuant to Mass. Gen. Laws ch. 214, §§ 3(6) and (8) instead.

Finally, the Trustee contends that he has stated shareholder derivative claims for aiding and abetting a breach of fiduciary duty and unjust enrichment via excessive compensation for which relief can be granted in Count XIII.  He asserts that as a trustee proceeding pursuant to 11 U.S.C. § 544(a), he stands in the shoes of a hypothetical creditor and would not ordinarily be bound by a corporation's ratification of its own wrongful conduct.  Furthermore, a trustee of a bankrupt corporation has standing to assert breach of fiduciary duty against former officers and directors. Additionally, such a trustee can assert an aiding and abetting claim against third parties who assisted a breach of fiduciary duty.  In a Chapter 7 proceeding, the trustee becomes a shareholder of a closely held corporation and succeeds to all of the debtor's rights in the stock, including the ability to institute legal action.  Here, the Trustee states that he is standing in the shoes of the Debtor as the sole shareholder and asserting a claim against Susan for "participation in a scheme to pay an exorbitant salary to herself."[85]  According to the Trustee, the Corporation need not be a nominal defendant in the lawsuit, but he will amend the Complaint to add the Corporation as a defendant if necessary.  The Trustee states that the *in pari delicto* defense does not apply because Susan and the Debtor are insiders of the Corporation.  Additionally, he argues that there is no evidence of an express contract as the Defendants allege and states that he should be allowed discovery on this matter.  Therefore, the Trustee contends that he has stated a claim for which relief can be granted and urges me to deny the Motion to Dismiss.

---

[85] Trustee's Surreply, Docket No. 61, Exhibit A, at 9.

## IV. <u>DISCUSSION</u>

### A.   <u>Federal Rule of Civil Procedure Rule 12(b)(6) Standard of Review</u>

In *Ashcroft v. Iqbal*,[86] the Supreme Court of the United States explained the standard for dismissal pursuant to Fed. R. Civ. Pro. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).  The Court held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[87]

The Court further stated that

> [a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.[88]

Furthermore, "factual allegations must be enough to raise a right to relief above the speculative level."[89]   Additionally, the Court of Appeals for the First Circuit has explained "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."[90]

"While most Rule 12(b)(6) motions are premised on a plaintiff's . . . failure to state an actionable claim, such a motion may sometimes be premised on the inevitable

---

[86] *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

[87] *Id.*at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)) (internal citations omitted).

[88] *Id.*at 678 (*quoting Bell Atlantic Corp.*, 550 U.S. at 555) (internal citations omitted).

[89] *Bell Atlantic Corp.*, 550 U.S. at 555 (internal citations omitted).

[90] *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

success of an affirmative defense."[91]   Such a dismissal requires "that (i) 'the facts

establishing the defense are definitely ascertainable from the complaint and other

allowable sources of information, and (ii) those facts suffice to establish the affirmative

defense with certitude.'"[92]

B.   Counts I and III: The Resulting Trust Causes of Action

Typically, "where a transfer of property is made to one person and the purchase

price is paid by another, a resulting trust is presumed in favor of the person by whom the

purchase price is paid."[93]   Massachusetts courts have held that "when one person pays the

purchase price of property and title is taken in the name of another, without more, the

beneficial interest in the property inures to the person who paid . . . the purchase price, by

way of a resulting trust."[94]   When a party pays only a portion of the purchase price, a

resulting trust exists only if

> the payment made by him was for some specific part or distinct interest in the
> estate; "for 'some aliquot part,'" as it is sometimes expressed; that is, for a
> specific share and that a general contribution of a sum of money toward an entire
> purchase is not sufficient.[95]

Additionally, "a resulting trust may be decreed under a variety of circumstances that do not

involve purchase money resulting trusts."[96]   There is a presumption that a gratuitous transfer

---

[91] *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (*citing Banco Santander de P.R. v. Lopez-Stubbe* (*In re Colonial Mortg. Bankers*), 324 F.3d 12, 16 (1st Cir. 2003)); *Blackstone Realty v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001); *Keene Lumber Co. v. Leventhal*, 165 F.2d 815, 820 (1st Cir. 1948)).

[92] *Id.* at 150 (*quoting Rodi v. S. New Eng. School of Law*, 389 F.3d 5, 12 (1st Cir. 2004)).

[93] *Frank v. Frank*, 335 Mass. 130, 135 (1956).

[94] *Druker v. Druker*, 308 Mass. 229, 230 (1941).

[95] *Id.* at 230-231 (internal citations omitted).

[96] *Citizens Bank of Mass. v. Coleman*, 83 Mass. App. Ct. 609, 613 (2013) (*quoting* Bogert's Trusts and Trustees, ch. 23, § 451 (2005)). *See also Lambrou v. Lambrou*, 87 Mass. App. Ct. 1105, 2015 WL 668456, at *6 (Feb. 18, 2015).

between family members, including spouses, is a gift.[97]  That presumption may be overcome and

a resulting trust established if "(1) the intent of the transferor at the time of the transfer was not

to convey the beneficial interest to the transferee, and (2) there was acquiescence on the part of

the transferee."[98]  Intent is a key element.[99]  It is not required that an agreement existed between

the parties at the time of the conveyance, "nor is it necessary to establish that the transferee

promised to reconvey the property to the transferor."[100]  Instead, the intent of the transferor at the

time of the transfer and the subsequent conduct of the transferor and transferee determine

whether a resulting trust arose.[101]  The subsequent conduct of a transferor who continues to

"exercise . . . the indicia of ownership" may be the basis of a resulting trust.[102]

The Trustee asks me to impose a resulting trust on a share of the proceeds from the sale

of the Georgetown Property in Count I of his Complaint and on the Condominium in Count III.

To survive the Motion to Dismiss, the Trustee must have made allegations of fact that, taken as

true, support a reasonable inference that the defendant is liable for the misconduct alleged.[103]

With regard to the Georgetown Property, the Trustee alleges that the Realty Trust purchased the

property.  Based on the timing of the purchase, which occurred approximately one month after

the Debtor and Susan sold their Andover home, the Trustee contends that at least some portion of

the purchase price came from the Debtor's unquantified share of the proceeds of the sale of the

---

[97] See *Frank v. Frank*, 335 Mass. at 135.

[98] *Citizens Bank of Mass.,* 83 Mass. App. Ct. at 616-17.

[99] *Id.* at 612.

[100] *Id*. at 617.

[101] *Id*. at 614.

[102] *Lambrou*, 87 Mass. App. Ct. 1105, 2015 WL 668456, at *6 (2015).

[103] See *Ashcroft*, 556 U.S. at 678.

Andover home.  Additionally, the Trustee alleges that in 2001, the Debtor represented that he owned a 50% interest in the Georgetown Property on a financial statement provided to Sovereign Bank.  The Trustee also contends that, based on the income disparity between Susan and the Debtor at the time of the purchase of the Georgetown Property, "it is therefore possible" that the Debtor executed the note securing the original mortgage on the property.  He further alleges that the Debtor's signing of subsequent promissory notes and mortgages and his residing on the property show that he intended to retain a beneficial interest.

Given that the Realty Trust purchased the Georgetown Property, the presumption of a gift does not apply because the Debtor's alleged contribution of proceeds was not a gratuitous transfer to a family member.[104]  The Trustee's allegation that the Debtor claimed to own a 50% interest in the property is sufficient to establish a purchase money resulting trust claim that is plausible on its face because the Debtor made a payment to the Realty Trust intending to acquire "some specific part or distinct interest in the estate."[105]  Additionally, the Trustee has stated a plausible claim for a resulting trust based on the Debtor's continued "exercise [of] . . . the indicia of ownership,"[106] including allegedly claiming a 50% interest in the Georgetown Property and executing mortgage documents along with Susan.[107]

---

[104] *See Callahan v. United States (In re Callahan)*, 419 B.R. 109, 127 (Bankr. D. Mass. 2009), *decision clarified*, 425 B.R. 728 (Bankr. D. Mass. 2010), *aff'd*, 442 B.R. 1 (D. Mass. 2010).

[105] *Druker*, 308 Mass. at 230-31.

[106] *Lambrou*, 87 Mass. App. Ct. 1105, 2015 WL 668456,  at *6.

[107] *See e.g. Citizens Bank of Mass.*, 83 Mass. App. Ct. at 618 (stating that selling or purporting to grant a mortgage in a property is "consistent with beneficial ownership"); *Krasner v. Krasner*, 362 Mass. 186, 189 (1972) (when a transferor "paid all expenses connected with the property and controlled it in all details," a gratuitous transfer was not intended).

With regard to the Condominium the S.R.W. Realty Corp. purchased in 2011, the Trustee has not alleged that the Debtor paid "for 'some aliquot part'" of the Condominium.[108]   The Trustee alleges that the Debtor's spending seven to ten days at the Condominium each month indicates that he has retained a beneficial interest in the property.   Merely residing in a home does not rise to the level of "exercise [of] . . . the indicia of ownership."[109]   Accordingly, the Trustee has failed to state a resulting trust claim for which relief may be granted for the Condominium.   I will deny the Motion to Dismiss as to Count I and grant it as to Count III.

C.  Counts II and IV: Constructive Trust

In Massachusetts, a constructive trust is

a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment.[110]

A constructive trust is a remedy, not a substantive cause of action.[111]   Count II and IV of the Trustee's Complaint ask me to find that the Georgetown Property and Condominium, respectively, are held in constructive trust.   Given that a constructive trust is not a cause of action, Counts II and IV are dismissed.

The Trustee's Opposition states that "to the extent the . . . constructive trust is not a cause of action . . . the Trustee requests leave to file an amended complaint in which Counts II and IV

---

[108] *See Frank*, 335 Mass. at 135.

[109] *Lambrou*, 87 Mass. App. Ct. 1105, 2015 WL 668456, at *6. *See Citizens Bank of Mass.*, 83 Mass. App. Ct. at 618; *Krasner*, 362 Mass. at 189.

[110] *Maffei v. Roman Catholic Archbishop of Bos.*, 449 Mass. 235, 246 (2007).

[111] *See, e.g., In re Zecher*, No. 06-12151-WCH, 2006 WL 3519316, at *2 (Bankr. D. Mass. Dec. 6, 2006); *Palandjian v. Pahlavi*, 614 F. Supp. 1569, 1578 (D. Mass. 1985) ("A constructive trust is not a substantive device but merely an equitable remedy to compel a person not justly entitled to property to transfer it to another."), *aff'd*, 808 F.2d 1513 (1st Cir. 1986); *Feinman v. Lombardo*, 214 B.R. 260, 265 (D. Mass. 1997) (constructive trust is equitable remedy that court imposes to prevent unjust enrichment).

are pleaded as claims for unjust enrichment."[112]   The Trustee has not yet filed a motion to

amend. If he does so, it will be addressed in due course.

    D.  Counts V, VI, VII, VIII, and IX: Fraudulent Transfer Claims

The Trustee alleges that the Debtor made avoidable, fraudulent transfers to Susan

pursuant to 11 U.S.C. §§ 548(a)(1)(A), (a)(1)(B)(ii)(I), and (a)(1)(B)(ii)(IV).  Section 548 states,

in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . .
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[113]

"Transfer" is defined in 11 U.S.C. § 101(54)(D) as "each mode, direct or indirect, absolute or

conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an

interest in property."[114]

Little case law is available on the avoidance of a shift in salary from a debtor who is the

sole owner of a business entity to a spouse or family member as a fraudulent transfer pursuant to

---

[112] Opposition, Docket No. 50 at 13.

[113] 11 U.S.C. § 548.

[114] 11 U.S.C. § 101(54)(D).

11 U.S.C. § 548(a). More case law exists on whether such an action constitutes a transfer of property with the intent to hinder, delay, or defraud a creditor resulting in denial of a debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) or an avoidable preference pursuant to 11 U.S.C. § 547.[115] Courts considering scenarios similar to the one that the Trustee posits here have determined that such changes in salary are transfers of property of the debtor that may be avoidable preferences or grounds for denying the debtor's discharge.[116] The court in *Coady v. D.A.N. Joint Venture, LP* denied a debtor's discharge when the debtor, who was $27 million in debt after a real estate market downturn, provided most of the labor for businesses in his wife's name without compensation.[117] The debtor did not have a bank account, and title to the car he drove and home he lived in were in his wife's name.[118] That court concluded that "diversion of 'the fruits of one's labor'" may constitute a transfer of property with intent to hinder, delay, or defraud a creditor.[119]

Here, the Debtor argues that the changes in the salaries he and Susan received was not a transfer of an interest of his in property because the salaries were paid by the Corporation. While it is true that Massachusetts law generally treats corporations and their shareholders as separate entities,[120] "[t]his distinction . . . [is] unavailing when the debtor is shown to have had an

---

[115] *See Coady v. D.A.N. Joint Venture, LP (In re Coady)*, No. 08-81332-CIV, 2009 WL 9041189 (S.D. Fla. Apr. 1, 2009); *In re Winik*, 39 F. Supp. 3 (D.N.J. 1941).

[116] *See In re Coady*, 2009 WL 9041189, at *7 ; *In re Winik*, 39 F. Supp. 3 at 5.

[117] *In re Coady*, 2009 WL 9041189, at *1-3.

[118] *Id.* at *2.

[119] *Id.* at *7.

[120] *See, e.g., Pratt v. Bacon*, 27 Mass. 123 (1830).

*equitable* interest in property held nominally by a third party."[121]   While the funds used to pay

salaries to the Debtor and Susan may have come from the Corporation, the Debtor had at least an

equitable property interest in compensation earned for his labor on behalf of the Corporation.[122]

The Trustee has stated sufficient factual matter, namely, the changes in the Debtor and Susan's

salaries from the Corporation as the Debtor's financial liabilities increased, to state a plausible

claim that the Debtor transferred an interest in property of his to Susan.

A transfer of property alone is not sufficient to state a claim pursuant to 11 U.S.C. §§

548(a)(1)(A) or (a)(1)(B)(ii)(IV).   A claim pursuant to 11 U.S.C. § 548(a)(1)(A) also requires

that the transfer was made "with actual intent to hinder, delay, or defraud any entity to which the

debtor was . . . indebted."[123]   "It is often impracticable, on direct evidence, to demonstrate an

actual intent to hinder, delay or defraud creditors."[124]   Instead, courts may "infer fraudulent

intent from the circumstances surrounding the transfer . . . taking particular note of certain

recognized indicia or badges of fraud"[125]   The United States Court of Appeals for the First

Circuit has held that

> [a]mong the more common circumstantial indicia of fraudulent intent at the time
> of the transfer are: (1) actual or threatened litigation against the debtor; (2) a
> purported transfer of all or substantially all of the debtor's property; (3)
> insolvency or other unmanageable indebtedness on the part of the debtor; . . . (4) a
> special relationship between the debtor and the transferee; and, after the transfer,
> (5) retention by the debtor of the property involved in the putative transfer.[126]

---

[121] *In re Coady*, 2009 WL 9041189, at *7 (emphasis in original) (*quoting Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 571-72 (Bankr. S.D.N.Y. 2005)).

[122] *See, e.g., In re Coady*, 2009 WL 9041189, at *6; *In re Klutchko*, 338 B.R. at 571.

[123] 11 U.S.C. § 548(a)(1)(A).

[124] *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991).

[125] *Id.* (internal citations omitted).

[126] *Id.* (internal citations omitted).

While "the presence of a single badge of fraud may spur mere suspicion . . . the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose."[127]

Here, the Trustee has alleged that actual litigation had taken place against the Debtor at the time of the purported salary transfers.  Black Swan, a creditor of the Debtor via his personal guaranty of the Golf Entities' debt, commenced litigation against the Debtor on October 15, 2010.  Given that the Trustee alleges the loans to the Golf Entities and Beta Leasing were declared in default on May 26, 2009, and October 22, 2009, the Debtor could have anticipated litigation in 2009 or earlier.  The Trustee has not alleged any facts indicating that the changes in income were a "transfer of all or substantially all of the debtor's property,"[128] the second badge of fraud.  As for the third badge of fraud, "insolvency or other unmanageable indebtedness,"[129] it is plausible that the Debtor-guaranteed $1,690,000 and $89,000 deficiency claims that Black Swan asserted against the Golf Entities and Beta Leasing following foreclosure sales rendered the Debtor insolvent or with unmanageable indebtedness.  Fourth, it is obvious that a special relationship, meaning a "family, friend, friendship, or close associate relationship,"[130] existed between the Debtor and Susan.  Thus, the Trustee has stated sufficient facts for the 11 U.S.C. § 548(a)(1)(A) claim to have "facial plausibility."[131]  Accordingly, the motion to dismiss Count V is denied.

---

[127] *Id.* at 1254-55 (internal citations omitted).

[128] *Id.* at 1254.

[129] *Id.*

[130] *Id.* (*quoting In re May,* 12 B.R. 618, 627 (N.D. Fla. 1980)).

[131] *Ashcroft*, 556 U.S. at 678.

As for the 11 U.S.C. §§ 548(a)(1)(B)(ii)(I) and (IV) claims, the Trustee had to allege facts sufficient to allow the court to draw a reasonable inference that the Debtor did not receive "reasonably equivalent value" for the purported transfers.[132]    The Bankruptcy Code does not define "reasonably equivalent value." "Value" is defined as "property, or satisfaction or securing of a present or antecedent debt . . . but . . . not . . . an unperformed promise to furnish support."[133] If value was given, a court must determine if it was reasonably equivalent, in other words, "whether the debtor got roughly the value it gave."[134]    "[A] reasonably equivalent value determination should be based on all of the facts and circumstances of the case."[135]    Courts look to the totality of the circumstances, which may include "(1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) the transferee's good faith."[136]    Here, none of the parties have alleged that the Debtor received any property, satisfaction or securing of a present or antecedent debt, or other item that could constitute "value" in exchange for shifting a portion of his salary to Susan. Accordingly, it is plausible that the Debtor made a transfer to Susan without receiving reasonably equivalent value.

To avoid dismissal of his 11 U.S.C. § 548(a)(1)(B)(ii)(I) claim, the Trustee must show that it is at least plausible that the Debtor is insolvent.    "Insolvent" is defined in 11 U.S.C. § 101(32)(A) as follows:

---

[132] 11 U.S.C. § 548(a)(1)(B).

[133] 11 U.S.C. § 548(d).

[134] *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212-23 (3rd Cir. 2006).

[135] *Tomsic v. Pitocchelli (In re Tri-Star Technologies Co., Inc.)*, 260 B.R. 319, 325 (Bankr. D. Mass. 2001) (internal citations omitted).

[136] *Pension Transfer Corp.*, 444 F.3d at 213 (*Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 148-49, 153 (3rd Cir. 1996)).

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title . . . .[137]

An "entity" includes a person, according to 11 U.S.C. § 101(15).   The Trustee states in his Complaint that Black Swan has a judgment of approximately $1,690,000 against the Debtor and, according to his schedules and his testimony at the meeting held pursuant to 11 U.S.C. § 341, the Debtor owns little property.   Therefore, the Trustee has stated a plausible claim for relief pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I). The Motion to Dismiss will be denied as to Count VI.

The Trustee also included a claim under 11 U.S.C. § 548(a)(1)(B)(ii)(IV) in his Complaint. To state a plausible claim under this section, the Trustee must plead sufficient facts for the court to draw the conclusion that the Debtor "made such transfer to or for the benefit of an insider . . . under an employment contract and not in the ordinary course of business."[138]   As discussed above, the Trustee has made a plausible argument that the property transferred belonged to the Debtor. Susan is certainly an insider of the Debtor pursuant to 11 U.S.C. § 101(31) because she is "a relative of the debtor."[139]   The Trustee stated in his Complaint that "the Debtor made said Income Transfers . . . under an employment contract and not in the ordinary course of business."[140]   He has not provided any facts to support the existence of an employment contract between the Debtor as an individual and Susan. As discussed above, he has, however,

---

[137] 11 U.S.C. § 101(32)(A).

[138] 11 U.S.C. § 548(a)(1)(B)(ii)(IV).

[139] 11 U.S.C. § 101(31)(A)(i).

[140] Opposition, Docket No. 50 at ¶ 86.

alleged sufficient facts to plausibly argue that the distinction between the Debtor and the Corporation may be disregarded. Accordingly, an employment contract between the Corporation and Susan, which the Trustee alleges exists, could satisfy this requirement. Therefore, the Trustee has stated a plausible claim for relief pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(IV). The Motion to Dismiss will be denied as to Count VII.

The Trustee has also alleged that the Debtor made fraudulent transfers of his salary to Susan that he may recover through Mass. Gen. Laws ch. 109A, § 5(a)(1). Pursuant to 11 U.S.C. § 544(b), a trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding [an allowed unsecured claim] . . . ."[141] Similar to 11 U.S.C. § 548(a)(1)(A), Mass. Gen. Laws ch. 109A, § 5(a)(1) states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>     (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

Mass. Gen. Laws ch. 109A, § 8(a)(1) gives a creditor the power to avoid such a transfer to the extent necessary to satisfy its claim.[142]

Mass. Gen. Laws ch. 109A, § 5(b) contains a non-exhaustive list of factors courts may consider when determining actual intent of a debtor to hinder, delay, or defraud a creditor. The list includes:

> whether (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or

---

[141] 11 U.S.C. § 544(b).

[142] Mass. Gen. .Laws ch. 109A, § 8(a)(1).

obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[143]

While not all of the factors apply here, the Trustee has alleged facts sufficient for me to conclude it is plausible he will be able to prove some of them. Given that Susan is a close family member of the Debtor, the purported transfers were made to an insider.[144]  The Trustee has alleged that the transfers began in 2010, the same year that the Debtor was "sued or threatened with suit" by Black Swan and within a year of when the loans to the Golf Entities and Beta Leasing that the Debtor guaranteed were declared in default.[145] Furthermore, the Trustee has asserted that the Debtor was insolvent around that time. Finally, according to the Trustee, the transfers began around the time that "a substantial debt was incurred,"[146] namely, the Debtor's liability on the Golf Entities and Beta Leasing loans that arose from the default of those entities.  Accordingly, the Trustee has stated a claim for relief that is plausible on its face.  The Motion to Dismiss will be denied as to Count VIII of the Complaint.

The Trustee has also asserted a claim pursuant to Mass. Gen. Laws ch. 109A, § 6(a), which states that

---

[143] Mass. Gen. Laws ch. 109A, § 5(b).

[144] *See Nickless v. Clemente (In re Clemente)*, 413 B.R. 1, 4 (Bankr. D. Mass. 2009), *rev'd in part on other grounds*, 434 B.R. 202 (D. Mass. 2010) (applying Massachusetts law and stating that a son who was a transferee from his mother was an insider).

[145] Mass. Gen. Laws ch. 109A, § 5(b)(4).

[146] Mass. Gen. Laws ch. 109A, § 5(b)(10).

a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[147]

Neither the statute nor Massachusetts case law defines "reasonably equivalent value" for the purposes of Mass. Gen. Laws ch. 109A, § 6(a).  Accordingly, it is appropriate to turn to cases decided under the corresponding section of the Uniform Transfer Act and the Bankruptcy Code.[148]  I have already held that the Trustee has alleged facts stating a plausible argument that the Debtor did not receive reasonably equivalent value pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(IV) in Count VI of his Complaint.  He has also stated facts indicating that the Debtor was insolvent at the time of the purported transfers.  Therefore, he has also stated a plausible claim for relief pursuant to Mass. Gen. Laws ch. 109A, § 6(a).  The Motion to Dismiss is denied as to Count IX of the Complaint.

### E.  Counts X and XI: Preferential Transfer Claims

Pursuant to 11 U.S.C. § 547(b), a trustee may avoid a preferential transfer made

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—

---

[147] Mass. Gen. Laws ch. 109A, § 6(a).

[148] *See* Mass. Gen. Laws ch. 109A, § 12 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states which enact it");*Yankee Microwave, Inc. v. Petricca Comm. Sys., Inc.*, 53 Mass. App. Ct. 497, 516 (2002) ("Where Massachusetts law is silent, we look to the law of other jurisdictions that have adopted provisions analogous to the MFCA, 'and to decisions construing analogous provisions of the Bankruptcy Code.') (*quoting Ferrari v. Barclays Bus. Credit, Inc. (In re Morse Tool, Inc.)*, 148 B.R. 97, 130 (Bankr. D. Mass. 1992)).

(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by
the provisions of this title.[149]

As discussed above, the purported shifts in income between the Debtor and Susan may constitute

transfers.  As the Debtor points out, however, 11 U.S.C. § 547(b)(1) requires any transfer to have

been made to or for the benefit of a creditor.  The Trustee has not alleged that Susan is a creditor

of the Debtor.  He states that his preferential transfer claim is "pled in the alternative . . . in the

event that . . . discovery reveals . . . an underlying antecedent debt owed by the Debtor to

Susan."[150]  The Supreme Court has held that, when defending against a Fed. Rules Civ. Pro.

(12)(b)(6) motion to dismiss, "factual allegations must be enough to raise a right to relief above

the speculative level."[151]  The Trustee has not pled any facts demonstrating that his 11 U.S.C. §

547(b) claim is based on more than mere speculation.  Accordingly, he has not stated a plausible

claim for relief.  I will grant the Motion to Dismiss as to Count X of the Complaint.

Additionally, the Trustee has claimed he is entitled to avoid the purported transfers

pursuant to the analogous provision of the MA UFTA, Mass. Gen. Laws ch. 109A, § 6(b), which

states:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose
before the transfer was made if the transfer was made to an insider for an
antecedent debt, the debtor was insolvent at that time, and the insider had
reasonable cause to believe that the debtor was insolvent.[152]

Similar to 11 U.S.C. § 547(b), the statute is limited to transfers made to an insider for an

antecedent debt.  Again, given that the Trustee has not alleged any facts indicating the Debtor

---

[149] 11 U.S.C. § 547(b).

[150] Opposition, Docket No. 50 at 25.

[151] *Bell Atlantic Corp.*, 550 U.S. at 555 (internal citations omitted).

[152] Mass. Gen. Laws ch. 109A, § 6(b).

owed an antecedent debt to Susan, the claim is merely speculative.  I will grant the Motion to

Dismiss as to Count XI of the Complaint.

### F.  Count XII: The Reach and Apply Claim

The Trustee has asserted an equitable reach and apply action pursuant to Massachusetts

common law.  Massachusetts law allows two types of reach and apply claims, a common law

claim (also called a non-statutory claim) and a statutory claim made pursuant to Mass. Gen.

Laws ch. 214, § 3(6).[153]  The common law claim requires a judgment, with some exceptions that

are not relevant here, such as "where a judgment and execution would be of no practical

utility."[154]  Massachusetts courts treat the common law claim as a civil action, not merely a

remedy.[155]  The statutory claim requires a plaintiff to establish only that a debt is owed to it by

the defendant and that the defendant has property that is "incapable of attachment or of taking on

execution in a legal action."[156]

Here, the Trustee has attempted to state only a common law reach and apply claim, but

the Trustee does not yet have a judgment in this case.  Therefore, the Debtor contends that the

Trustee does not have standing to assert a common law reach and apply claim.  Nevertheless, the

Trustee argues that he does not need a judgment to assert the reach and apply claim because he

has the status of a *hypothetical* judgment creditor pursuant to 11 U.S.C. § 544(a)(2), not an actual

judgment creditor.  The language of 11 U.S.C. § 544(a)(2) states that a trustee has "the rights and

powers of . . . a creditor that . . . obtains . . . an execution against the debtor . . . *whether or not*

---

[153] *See Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp.2d 52, 54-57 (D. Mass. 2002).

[154] *Id.* at 55 (*quoting Maguire v. Spaulding*, 194 Mass. 601, 604 (1907)).

[155] *See Cavadi v. DeYeso*, 458 Mass. 615, 630-31 (2011) (referring to common law reach and apply as an action).

[156] *Hunter*, 241 F. Supp.2d at 57-58 (*quoting Mass. Elec. Co. v. Athol One*, 391 Mass. 685, 687-88 (1984)).

*such creditor exists . . . .*"[157]  Thus, the Trustee is correct that he has the rights and powers of a hypothetical judgment creditor.[158]  He is using the reach and apply action in an attempt to reach property, the Debtor's purported share of the Condominium and proceeds from the sale of the Georgetown Property, which is not subject to execution.[159]  Accordingly, the Trustee has pled a claim for relief that is plausible on its face.  The Motion to Dismiss will be denied as to Count XII of the Complaint.

   G.   Count XIII: The Shareholder Derivative Claim

   Finally, the Trustee has attempted to bring two shareholder derivative claims against Susan.  He asserts, first, that Susan aided and abetted a breach of the Debtor's fiduciary duty of good faith and loyalty to the Corporation and, second, that she was unjustly enriched by the salary the Corporation paid to her.  He seeks to have Susan return the "grossly excessive compensation she received from the Corporation."[160]

   To determine if the Trustee has stated a cause of action for his two derivative claims, I must look to the law of the state of incorporation.[161]  Although the parties' pleadings do not state where the Corporation was formed, I may take judicial notice that its Articles of Organization were filed in Massachusetts.

---

[157] 11 U.S.C. § 544(a)(2) (emphasis added).

[158] *See, e.g., Old West Annuity and Life Ins. Co. v. Apollo Group*, 605 F.3d 856, 864 (11th Cir. 2010) (stating that a trustee has the status of a hypothetical lien creditor pursuant to 11 U.S.C. § 544(a)(1), which echoes the language of 11 U.S.C. § 544(a)(2)); *In re Reid*, 435 B.R. 810, 813 (Bankr. D. Mass. 2010) (stating that a trustee has the status of a hypothetical judgment creditor); *In re Parrish*, 171 B.R. 138, 141 (Bankr. M.D. Fla. 1994) (stating that a trustee has the "rights and powers" of a hypothetical creditor with a judicial lien).

[159] *See Springfield Redevelopment Auth. v. Garcia*, 44 Mass. App. Ct. 432, 436 (1998).

[160] Complaint, Docket No. 1, ¶ 130.

[161] *Notinger v. Costa (In re Robotic Vision Sys., Inc.)*, 374 B.R. 36, 45 (Bankr. D.N.H. 2007).

A director or officer of a corporation has a fiduciary duty to the corporation pursuant to Mass. Gen. Laws ch. 156D, § 8.30 and a duty of loyalty pursuant to Mass. Gen. Laws ch. 156D, § 8.31.[162]  A party may be liable for aiding and abetting a breach of fiduciary duty if a breach of duty occurred, the party knew of the breach, and the party "actively participate[d] or substantially assist[ed] in or encourage[d] the breach to the degree that he or she could not reasonably have acted in good faith."[163]  In a bankruptcy case, a trustee "may assert only those claims that [a debtor] could have asserted prior to seeking the protection of the bankruptcy court."[164]  Here, rather than argue that the Trustee has failed to state a claim for which relief may be granted, the Defendants' motion is "premised on the inevitable success of an affirmative defense."[165]  The Defendants argue that the defense of *in pari delicto* is available to Susan.

The *in pari delicto* doctrine "prohibits plaintiffs from recovering damages resulting from their own wrongdoing."[166]  It applies when "the plaintiff, as compared to the defendants, bears at least substantially equal responsibility for the wrong he seeks to redress and . . . preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest."[167]  The defense is "available to a defendant in an action by a bankruptcy trustee whenever that defense would have been available in an action by the debtor."[168]  Nonetheless, as the Trustee rightly contends, *in pari delicto* is not available to Susan as a defense because she is

---

[162] Mass. Gen. Laws ch. 156D, §§ 8.3-8.31.

[163] *Fine v. Sovereign Bank*, 06cv11450–NG, 2011 WL 2134380, *2 (D. Mass. 2011) (*citing Arcadi v. NAGE, Inc.*, 447 Mass. 616, 623–24 (2006)).

[164] *Nisselson v. Lernout*, 469 F.3d at 153.

[165] *Id.* at 150.

[166] *Id.*at 151.

[167] *Id.* at 152.

[168] *Id.* at 153.

an insider.  "*In pari delicto* bars claims against third parties, but does not apply to corporate insiders or partners."[169]

> The Bankruptcy Code defines an "insider," in pertinent part, as follows:

> The term "insider" includes—(A) if the debtor is an individual—(i) relative of the debtor or of a general partner of the debtor . . . (iv) corporation of which the debtor is a director, officer, or person in control; (B) if the debtor is a corporation—(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; . . . or (vi) relative of a general partner, director, officer, or person in control of the debtor.[170]

Given that the debtor here is not the Corporation, Susan does not fall into a category of insider enumerated by the statute.  Nevertheless, the word "includes" indicates that the definition of "insider" is not limited to the enumerated list.  Some courts have developed categories of "non-statutory insiders," explaining that "it is not necessary that a non-statutory insider have actual control; rather, the question 'is whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length.'"[171]  Susan is a relative, the spouse, of the Debtor, who is the sole shareholder and director and officer of the Corporation.  I see no reason to distinguish between her status as a "relative of the [D]ebtor"[172] as an individual and her status as a "relative of a . . . director, officer, or person in control"[173] of the non-debtor Corporation for which the Debtor was the sole decision-maker. Therefore, she may not use the *in pari delicto* defense.

---

[169] *Goldin v. Primavera Familienstiftung*, (*In re Granite Partners, L.P.*), 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996). *See Nisselson v. Lernout*, 568 F. Supp.2d 137, 144-146 (D. Mass. 2008) (acknowledging the "corporate insider exception" while holding it was not applicable in that case) (internal citations omitted).

[170] 11 U.S.C. § 101(31).

[171] *Riley v. Tencara (In re Wolverine, Proctor & Schwartz, LLC)*, 447 B.R. 1, 30 (Bankr. D. Mass. 2011) (*quoting Schubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 382, 396-97 (3d Cir. 2009) (internal citations omitted)).

[172] 11 U.S.C. § 101(31)(A)(i).

[173] 11 U.S.C. § 101(31)(B)(vi).

The Trustee has also alleged a shareholder derivative claim against Susan for unjust enrichment. "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience."[174] "For a claim to prevail in Massachusetts, there must be 'unjust enrichment of one party and unjust detriment to another party.'"[175] The Trustee has alleged that Susan received large increases in her salary from the Corporation. He contends that the salary increases were "a waste of the Corporation's assets"[176] and includes facts indicating they were made to evade creditors. Thus, the Trustee has included sufficient factual material to state a claim for unjust enrichment against Susan that is plausible on its face. As a defense, the Defendants state that Susan's salary was paid pursuant to an express contract and that bars an unjust enrichment claim. The existence of such a contract between Susan and the Corporation is not an undisputed fact, nor was such a contract submitted with the Defendant's pleadings. Thus, it is not the case here that "the facts establishing the defense are definitely ascertainable from the complaint and other allowable sources of information."[177] Therefore, the claim may not be dismissed on the basis of the Defendant's affirmative defense. I will deny the Motion to Dismiss as to the unjust enrichment claim as well as the claim for aiding and abetting a breach of fiduciary duty in Count XIII.

---

[174] *Kerr v. Vince*, No. 07–30021–MBB, 2010 WL 1416511, *17 (D. Mass. Apr. 1, 2010) (quoting *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329(2005)).

[175] *Fernandes v. Havkin*, 731 F. Supp.2d 103, 114 (D. Mass. 2010).

[176] Complaint, Docket No. 1, ¶ 17.

[177] *Nisselson v. Lernout*, 469 F.3d 143 at 150.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order granting the Motion to Dismiss as to Counts

II, III, IV, X, and XI, and denying it as to Counts I, V, VI, VII, VIII, IX, XII, and XIII.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 20, 2015

Counsel Appearing:

     James M. Liston, Hackett, Feinberg, P.C., Boston, MA
          for the Chapter 7 Trustee
     John W. Moran, LeClairRyan, P.C., Boston, MA
          for Susan Wojtkun, Individually and as Trustee of the Susan R. Wojtkun Living
          Trust, and S.R.W. Realty Corp.
     John F. Sommerstein, Law Offices of John F. Sommerstein, Boston, MA
          for Peter Wojtkun